## THE REPUBLIC OF HAWAII *v.* BEN.

APPEAL FROM DISTRICT COURT OF HONOLULU.

SUBMITTED MARCH 23, 1896.          DECIDED MAY 5, 1896.

JUDD, C.J., FREAR AND WHITING, JJ.

A statute (Chap. 64, Laws of 1892) making punishable the use of "vulgar, profane or obscene language in any street, highway, store, shop or other public place or place of public resort," is violated when such language is used by a person while on the veranda of his own house, close to a public street, within hearing of persons passing on such street.

### OPINION OF THE COURT BY WHITING, J.

The defendant was charged with using vulgar and obscene language in a public place in Honolulu, etc., and appeals to this court on the following points of law certified by the District Magistrate:

1.   That the finding and conviction of the District Court in the above case is contrary to law.

2.   That the place where the alleged language was used is not a public place within the meaning of Chap. LXI. of the Session Laws of 1892.

3.   That the alleged language is not vulgar, profane and obscene language, and the use of language as proved does not constitute an offense under the provisions of the said Chap. LXI. of the Session Laws of 1892.

4.   The court had no jurisdiction under the evidence given to make the said conviction, as no offense is proven.

The offense charged is under the provisions of Chap. 64,

Laws 1892, amending Sec. 3, Chap. 34 of the Penal Code (and not Chap. LXI., Laws 1892, as set forth in defendant's points on appeal, probably a clerical error).

"It shall be unlawful for any person to use vulgar, profane or obscene language in any street, highway, store, shop, or other public place, or place of public resort."

The defendant claims that no offense was committed because (1) the language used was not "profane," "vulgar" nor "obscene," and (2) because the place where the language was used was not a "public place" nor any other of the places named within the meaning of the statute.

We have no hesitation in declaring that the language used by defendant was at least in part profane and in part obscene, and comes within the well known definitions. *Shields v. State,* 89 Ga. 549 (16 S. E. Rep. 66); *U. S. v. Bennett,* 16 Blatch. 338 (12 Myers' Fed. Dec. 2487).

It is not necessary however, nor proper to set forth such language in this decision.

*The Public Place.*

Defendant was on the veranda of his own house at Kamoiliili, in Honolulu, on the outskirts of the city on a new road cut in the McCully premises from Beretania to King street; the house is situated a short distance (12 to 25 feet) from the public street; the prosecuting witness's house is next to defendant's and separated by a fence; seven o'clock in the evening was the time when the language was used; several people were present, but they lived there either at defendant's or at prosecuting witness's house, or next door; several people were passing on the street.

By the statute many acts have been declared "offenses" when done or committed in "public" or in a "public place," or "place of public resort," and the meaning of such words has been construed from the nature of the act and the mischief to be remedied taken with the locality and its accessibility to the public or people in general, as in "affrays," "intoxication," "indecent

exposure," "gaming," "profane cursing," "using profane and obscene language."

The term "public place" is a relative one: what is a public place for one purpose is not for another.

19 Am. & Eng. Encyc. of Law, 563.

"*Intoxication.*"    *State v. Sower,* 52 Ind. 311.    *State v. Stevens,* 36 N. H. 59.

"*Affrays.*"    *Rex v. Hunt,* 1 Cox, Cr. Cases, 177.
"*Gaming.*"    *Graham v. State* (Ala.), 16 So. Rep. 934.

But these instances are not so analogous as the cases of the exposure of the person, "indecent exposure."    In such cases, it is not necessary that the place be one where the public have an indiscriminate right of access; it need not be open to the general public, because a place which will ordinarily be deemed private may, by virtue of the circumstances under which the exposure is made, come within the meaning of the term.    The act itself being one against decency and affecting good morals, has a great effect in determining whether the place is a public place, and although it might de done on one's private premises or in one's private yard, yet if in view of the people passing or in view of neighbors' windows or at a window of one's own house in sight of passers by, it is done in a public place.

The place is a public one if the exposure is such that it is likely to be seen by a number of casual observers.

*Van Houten v. State,* 46 N. J. Law, 16.
7 Am. & Eng. Encyc. of Law, 534.

The object and intent of this statute forbidding the use of obscene language is the same as that of the statute against indecent exposure, and both are for the protection of decency and good morals.    To say that a person may stand within the boundaries of his own private premises on a public street and make use of obscene language or expose indecently his person in such a situation that passers by on the public road might in the first instance hear and in the second see, and yet not be guilty on the

ground that the place is not a public one within the strict letter of the statute, would destroy the true intent of the Act.

It is claimed that the use in the Act of the words "or other public place" limits such a place to a street, highway, shop or store and places similar; that the construction of a penal statute should be liberal in favor of the accused.

The court cannot by construction create a crime or offense. In the *Queen v. Gay*, 8 Haw. 471, the court say, "A penal law cannot be extended by construction. The act constituting the offense must be within both the letter and spirit of the statute. Unless the proper meaning of the language of the statute brings a case within its letter, the rule of strict construction forbids the court to create a crime or penalty by construction, and requires it to avoid the same by construction."

In the *Queen v. San Tana*, 9 Haw. 108. "We cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts. We do not legislate or make laws. "Even where the court is convinced in its own mind that the legislature really meant and intended something not expressed by the phraseology of the Act, it has no authority to depart from the plain meaning of the language used. 'I cannot doubt,' says Lord Campbell, 'what the intention of the legislature was, but that intention has not been carried into effect by the language used. * * It is far better that we should abide by the words of the statute than seek to reform it according to the supposed intention. * * * Every departure from the clear language of the statute is in effect an assumption of legislative powers by the court. It has indeed been intimated that this is the case whenever the court permits the consideration of consequences to dictate the construction of a doubtful act. The judge must decide, but the law has not spoken. It is evident that his functions necessarily become to a certain extent legislative.' " (Endlich on Int. of Stat. pp. 10-12.)

"The only means the court has of finding the intention of the Act is from the words in which it is expressed."

(The court could not make the word "forward" mean "solicit" or "procure.")

In the present case, we are not at liberty to declare that the offense is complete and within the true meaning and letter of the Act unless the place where the offense was committed is within the meaning of the words "or other public place."

One rule of construction is that where a general word follows specific and particular words of the same nature as itself, it takes its meaning from them and is presumed to be restricted to the same genus as those words, or as comprehending only things of the same kind as those designated by them. Endlich on Int. of Stat., Sec. 405.

This is true unless there be something to show that a wider sense was intended. The restricted meaning which primarily attaches to the general word in such circumstances is rejected when there are adequate grounds to show that it was not used in the limited order of ideas to which its predecessors belong. Endlich, Sec. 408.

The general principle applies that the terms are to receive their plain and ordinary meaning, and courts are not at liberty to impose on them limitations not called for by the sense or objects or mischief of the enactment.

> Endlich, Sec. 405, Sec. 410.
> *U. S. v. Coombs*, 12 Peters, 80.

Statutes must be interpreted according to the intent and meaning and not always according to the letter. A thing within the intention is within the statute. Statutes should be interpreted according to the most natural and obvious import of their language. Every legislative act must have a reasonable construction. That which is implied in a statute is as much a part of it as what is expressed. *Thomas v. Norton*, 8 Haw. 69.

In *Woodforth v. The State*, the court says that the rule for the construction of statutes which "limits the meaning of words of general description to persons or things within the class or classes designated by preceding words of particular description,

can be used only as an aid in ascertaining the legislative intent, and not for the purpose of confining the operation of a statute within the limits narrower than those intended by the law maker. It affords a mere suggestion to the judicial mind that, where it clearly appears that the law maker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace those not within the class. The suggestion is one of common sense. Other rules of construction are, however, equally potent, especially the primary rule, which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. Another well established principle is that even the rule requiring the strict construction of a penal statute as against the prisoner (and in his favor liberally) is not violated by giving every word of the statute its full meaning, unless restrained by the context." The statute construed reads: "That if any person shall abuse any judge or justice of the peace; resist or abuse any sheriff, constable *or other officer* in the execution of his office," etc. The court held that a "supervisor of roads and highways" was within the meaning of "other officer," and that "the legislature intended that the general words should have a broader signification and embrace officers not of the particular character of those named in the statute. That it is not intended to ignore the rule which requires penal statutes as against the prisoner to be construed strictly and in his favor liberally. But it does prevent a construction as against him so strict, or in his favor so liberal, as to defeat the obvious intention of the legislature."

"The words of the statute, 'or other officer,' when viewed in the light of their ordinary meaning, and of all the rules or maxims for construction, and the mischief to be remedied, to-wit, abuse or resistance to public officers engaged in the execution of their offices, we think should be construed to embrace ministerial as well as judicial offices generally other than those named."

*Woodforth v. The State*, 26 Oh. St. 196.

*Foster v. Blount,* 18 Ala. 687, cited at length in Sutherland on Stat. Construction, Sec. 280.

The mischief to be remedied being the violation of decency and good morals by the use of profane and obscene language in an open place where the same can be heard by the public or people who may be passing on a public street, the intent of the legislature was not to restrict the words "or other public place" in their meaning to the particular words "street, highway, store or shop" and similar words, but to give them a general meaning, and a place becomes public according to circumstances, its accessibility to the public and its location in regard to public streets, and the mischief to be prevented, and in this case we hold that the place where the language was used was a public place within the meaning of the Act.

Appeal is dismissed.

*W. O. Smith, Attorney-General,* for prosecution.

*G. A. Davis,* for defendant.